# UNITED STATES DISTRICT COURT
# DISTRICT OF IDAHO

| | |
|---|---|
| THOMAS W. FALASH, an individual<br><br>Plaintiff,<br><br>vs.<br><br>INSPIRE ACADEMICS, INC., an Idaho non-profit corporation; CONNECTIONS EDUCATION, LLC, a Delaware corporation; CONNECTIONS ACADEMY OF IDAHO, LLC, an Idaho corporation; JILL HAMILTON, individually and as Director and President, Inspire Academics, Inc.; DIANA PLANE, individually and as Director, Inspire Academics, Inc.; MARCIA ROWE, individually and as Director, Inspire Academics, Inc.; GERALD CHOUINARD, individually and as Principal, Inspire Academics, Inc.; TONYA WESLEY, individually and as Senior Manager of Employee Relations, Connections Education, LLC,<br><br>Defendants. | Case No.: 1:14-cv-00223-REB<br><br>**MEMORANDUM DECISION AND ORDER RE:  DEFENDANTS' RENEWED MOTION FOR SUMMARY JUDGMENT (Docket No. 50)** |

Now pending before the Court is Defendants' Renewed Motion for Summary Judgment (Docket No. 50).  At the close of the July 26, 2016 hearing, the undersigned discussed the Court's initial assessment of the merits of certain arguments raised in the Motion, for the benefit of the parties moving forward.  Having carefully considered the record, and after additional consideration, that assessment remains unchanged and is now contained in this Memorandum Decision and Order, along with the Court's consideration of the balance of arguments raised in the Motion.

**MEMORANDUM DECISION AND ORDER - 1**

# I.  BACKGROUND

This case stems from the termination of Plaintiff Thomas W. Falash ("Falash") from employment with Defendant Inspire Academics, Inc. ("Inspire"), an online charter school contracted with Defendant Connections Educations, LLC ("Connections") to provide online K-12 school services within Idaho.  In response to his discharge, Falash brings this action, alleging seven claims: (1) violation of Constitutional (federal and state) due process; (2) violation of Section 504 of the Rehabilitation Act of 1973; (3) violation of Title II of the Americans with Disabilities Act ("ADA"); (4) violation of Idaho Code § 6-2101 et. seq. (Protection of Public Employees); (5) tortious interference with contract; (6) tortious interference with prospective economic advantage; and (7) discrimination under Title I of the ADA.  Defendants move for summary judgment, arguing that there exists no genuine issue of material fact to support these claims.

# II.  SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate where a party can show that, as to any claim or defense, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  One of the principal purposes of summary judgment "is to isolate and dispose of factually unsupported claims . . . ." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-34 (1986).  It is "not a disfavored procedural shortcut," but is instead the "principal tool[ ] by which factually insufficient claims or defenses [can] be isolated and prevented from going to trial with the attendant unwarranted consumption of public and private resources." *Id*. at 327.  "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment."

**MEMORANDUM DECISION AND ORDER - 2**

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).  There must be a genuine dispute

as to any *material* fact – a fact "that may affect the outcome of the case."  *Id*. at 248.

The evidence must be viewed in the light most favorable to the non-moving party, and

the Court must not make credibility findings.  *Id*. at 255.  Direct testimony of the non-movant

must be believed, however implausible.  *Leslie v. Grupo ICA*, 198 F.3d 1152, 1159 (9th Cir.

1999).  On the other hand, the Court is not required to adopt unreasonable inferences from

circumstantial evidence.  *See McLaughlin v. Liu*, 849 F.2d 1205, 1208 (9th Cir. 1988).

The moving party bears the initial burden of demonstrating the absence of a genuine

dispute as to a material fact.  *See Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) (en

banc).  To carry this burden, the moving party need not introduce any affirmative evidence (such

as affidavits or deposition excerpts) but may simply point out the absence of evidence to support

the nonmoving party's case.  *See Fairbank v. Wunderman Cato Johnson*, 212 F.3d 528, 532 (9th

Cir. 2000).

This shifts the burden to the non-moving party to produce evidence sufficient to support a

jury verdict in his favor.  *See Devereaux*, 263 F.3d at 1076.  The non-moving party must go

beyond the pleadings and show "by her [ ] affidavits, or by the depositions, answers to

interrogatories, or admissions on file" that a genuine dispute of material fact exists.  *Celotex*, 477

U.S. at 324.

### III.  DISCUSSION

**A.     Constitutional Due Process Claims**

A cause of action pursuant to 42 U.S.C. § 1983 may be maintained "against any person

acting under color of law who deprives another 'of any rights, privileges, or immunities secured

**MEMORANDUM DECISION AND ORDER - 3**

by the Constitution of the laws' of the United States." *S. Cal. Gas Co. v. City of Santa Ana*, 336

F.3d 885, 887 (9th Cir. 2003) (quoting 42 U.S.C. § 1983). The rights guaranteed by Section 1983

are "liberally and beneficently construed." *Dennis v. Higgins*, 498 U.S. 439, 443 (1991)

(quoting *Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 684 (1978)).

Defendants acknowledge that they are state actors. *See* Mem. in Supp. of MSJ, p. 5

(Docket No. 38, Att. 1). So, the only issue for this Court's review of Falash's due process claims

is whether a genuine dispute of material fact exists as to whether Defendants deprived Falash of

his constitutional right to procedural due process.

The Fourteenth Amendment prohibits states from "depriv[ing] any person of life, liberty,

or property, without due process of law." U.S. Const. Amend. XIV. "Procedural due process

rules are meant to protect persons not from the deprivation, but from the mistaken or unjustified

deprivation of life, liberty, or property." *Carey v. Piphus*, 435 U.S. 247, 259 (1978).

A procedural due process claim has two discrete elements. First, the court "asks whether

there exists a liberty or property interest which has been interfered with by the State." *Vasquez*

*v. Rackauckas*, 734 F.3d 1025, 1042 (9th Cir. 2013) (internal question marks and citation

omitted). Second, the court "examines whether the procedures attendant upon that deprivation

were constitutionally sufficient." *Id*. "[T]he Due Process Clause provides that certain

substantive rights – life, liberty, and property – cannot be deprived except pursuant to

constitutionally adequate procedures." *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 541

(1985).

There is no dispute that Falash had a property interest in his employment with Inspire.

*See* Mem. in Supp. of MSJ, p. 5 (Docket No. 38, Att. 1). As such, the issue before the Court

**MEMORANDUM DECISION AND ORDER - 4**

becomes whether a genuine dispute of material fact exists as to whether Falash received all the process that was due.

Generally speaking, Defendants contend that "[t]here is no question of fact that [Falash] was granted due process . . . as there was a formal written notice delivered to him on September 17, 2013" and "[Falash] was granted a proper hearing, at which the Board was present."  *Id*. at pp. 5, 7-8.  However, the fly in the ointment on this lynchpin issue is the sufficiency of the hearing provided to Falash  – specifically, whether the December 5, 2013 hearing was inevitably constitutionally deficient because the Board had prejudged the outcome.  *See Johnson v. Bd. of Trs. of Boundary Co. Sch. Dist. No. 101*, 2010 WL 530070, *6 (D. Idaho 2010) ("To conduct a hearing where there is even a 'probability' that the decision-maker will unfairly decide any issue presented violates due process requirements.  To that end, where a board of representatives has predetermined the outcome of a due process hearing, there may be a denial of due process.") (quoting *Withrow v. Larkin*, 421 U.S. 35 47 (1975), citing *Johnson v. Bonner Co. Sch. Dist. No. 82 v. Bd. of Trs.*, 887 P.2d 35, 39 (Idaho 1994)); *see also Playfair v. South Lemhi Sch. Dist. 292 Bd. of Trustees*, 2009 WL 2474205, *5 (D. Idaho 2009) ("A hearing does not comport with due process if it 'is totally devoid of a meaningful opportunity to be heard' because the decision-makers have predetermined the outcome of the hearing.") (quoting *Matthews v. Harney Co., Or., Sch. Dist. No. 4*, 819 F.2d 889, 893-94 (9th Cir. 1987)) (internal quotation marks and citation omitted).  The circumstances surrounding this discrete question preclude summary judgment on Falash's Constitutional due process claims.

Those circumstances include that, in October 2013, Connections' Assistant Director of Employee Relations and Training, Tonya Wesley, issued correspondence to Falash essentially

**MEMORANDUM DECISION AND ORDER - 5**

stating that, as of September 17, 2013 (far in advance of the December 5, 2013 hearing), he had *already* been terminated from Inspire. *See, e.g.*, Ex. K to Thomas Aff. (Docket No. 53, Att. 13) (10/23/13 memorandum from Wesley to Falash stating in relevant part: "Upon review of your complaints, no evidence was found to support that your bringing forth complaints to your school administrators had a bearing or influence *on your termination* from Inspire Academics. *Your termination* was related to your performance and complaints received regarding your behavior.") (emphasis added); *see also* Ex. P to Thomas Aff. (Docket No. 53, Att. 18) (10/4/13 letter from Wesley to Falash stating in relevant part: "As I have been directly involved in this process, I can confirm that this was not a decision based solely on information provided by Principal Chouinard and Vice Principal Frogley.").[1]  On October 25, 2013, Connections posted Falash's position as open and actively began recruiting job applicants. *See* Ex. J to Thomas Aff. (Docket No. 53, Att. 12).

At a minimum, these actions which predate the December 5, 2013 hearing when viewed with all inferences drawn in Falash's favor, support an argument that the Board had already made up its mind that Falash was no longer employed by Inspire – essentially rendering into window-dressing any subsequent hearing to consider whether he should be terminated pursuant to due process protocol.  Given this, it cannot be said that Falash's due process rights (under federal and state law) were satisfied as a matter of law.  Defendants' Motion for Summary Judgment is denied in this respect.[2]

---

[1]  That Wesley now testifies that her references in the Fall of 2013 to Falash being terminated "was a mistaken use of language," does not alter the inferences that can be made in Falash's favor that the September 5, 2013 was simply a *fait accompli*. *See* Wesley Decl., ¶ 7 (Docket No. 38, Att. 11).  Whether her language was a mistake, or whether she made a mistake in using the language she did in a procedural due process context, will be for the jury to decide.

[2]  In denying Defendants' Motion for Summary Judgment on this point, the Court is only calling into question whether the Board conducted a fair and impartial hearing. *See Stivers v. Pierce*, 71 F.3d 732, 741 (9th Cir. 1995) ("It is well-settled that the Due Process Clause prevents

**MEMORANDUM DECISION AND ORDER - 6**

**B.      Section 504 of the Rehabilitation Act of 1973 and Title II ADA Claims**

"Because the ADA was modeled on Section 504 of the Rehabilitation Act, 'courts have

applied the same analysis to claims brought under both statutes.'" *Boose v. Tri-County Metro.*

*Transp. Dist. of Oregon*, 587 F.3d 997, 1001 n.5 (9th Cir. 2009) (quoting *Zukle v. Regents of*

*Univ. of Cal.*, 166 F.3d 1041, 1045 n.11 (9th Cir. 1999)); *see also Douglas v. Cal. Dep't of Youth*

*Auth.*, 285 F.3d 1226, 1229 n.3 (9th Cir. 2002) (noting that cases interpreting the ADA and

Rehabilitation Act are "interchangeable").   As a result, the elements and burden of proof for a

retaliation claim under the Rehabilitation Act is the same as the ADA – in other words, absent

direct evidence of retaliation, the court must apply the *McDonnell Douglas* burden-shifting

framework.   *See Corrales v. Moreno Valley Unified Sch. Dist.*, 2010 WL 2384599, *4 (C.D. Cal.

2010) (applying framework to Rehabilitation Act claim); *Barnett v. U.S. Air, Inc.*, 228 F.3d

1105, 1121 (9th Cir. 2000) (applying framework to ADA claim)[3]

---

the state from depriving a plaintiff of a protected property interest without 'a fair trial in a fair
tribunal.'" (quoting *In re Murchison*, 349 U.S. 133, 136 (1955)).   The Court is not stating here
that the Board could not *ipso facto* be impartial.   *Compare with Byers v. New Plymouth Sch.*
*Dist. No. 372*, 2013 WL 5943938, *7 (D. Idaho 2013) (focusing not on Board's make-up *per se*,
but whether bias existed, stating: "To rebut an administrative board's presumption of honesty, a
plaintiff must demonstrate that the tribunal was actually biased, or that there was an
impermissible appearance of bias.").   Despite questions concerning the Board's impartiality as to
various other moving parts to Plaintiff's Constitutional due process claims, the Court rules here
that (1) Defendants did not violate Idaho Code § 33-513(7) procedural requirements, and (2) to
the extent Idaho Code § 67-2345 required an executive session (this Memorandum Decision and
Order makes no such finding), there was no deprivation of due process here by virtue of the fact
that it ended up not being a closed session – (Indeed, the decision as to whether to enter into an
executive decision under the Idaho open meeting law is a discretionary decision in the first
instance).

[3] Under the *McDonnell Douglas* burden-shifting framework, the plaintiff must first
establish a prima facie case of retaliation.   Then, the burden shifts to the defendant to set forth a
legitimate, non-retaliatory reason for the actions taken.   If the defendant does so, the plaintiff
must then show that the defendant's proffered reason is a pretext for retaliation.   *See McDonnell*
*Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973).

**MEMORANDUM DECISION AND ORDER - 7**

So, to state a prima facie claim under both the Rehabilitation Act and Title II of the ADA, a plaintiff must show that (1) he engaged in a protected activity; (2) he suffered a materially adverse employment action; and (3) there exists a causal connection between the protected activity and the adverse employment action. *See Pardi v. Kaiser Found. Hosp.*, 389 F.3d 840, 849 (9th Cir. 2004). Defendants argue that Falash cannot state a prima facie claim for either a violation of the Rehabilitation Act or the ADA because (1) Falash did not engage in a protected activity, but was, instead, doing only what his job required; and (2) he cannot establish a causal connection between any alleged protected activity and his termination (Defendants concede that termination from employment represents an adverse employment action ). *See* Mem. in Supp. of MSJ, pp. 10-15 (Docket No. 38, Att. 1).

As described at the conclusion of oral argument, the undersigned struggles with understanding where, exactly, Falash's duties at Inspire begin and end. On the one hand, Defendants contend that Falash was fired because he "fail[ed] in the most essential aspect of his job" (ensuring that special education students' needs were being met under their individual education plans and logging that information to ensure Connections was in compliance with its reporting obligations). *See* Mem. in Supp. of MSJ, p. 13 (Docket No. 38, Att. 1). On the other hand, Falash asserts that he did more than just his job requirements, to include advocacy work on behalf of disabled students. *See* Opp. to MSJ, pp. 13-14 (Docket No. 53). The former is not protected activity; the latter is protected activity. Unfortunately, the record is not clear on whether Falash's advocacy work, if true, was part of his job duty requirements. As such, an issue of fact exists concerning whether Falash engaged in protected activity

Likewise, given the closeness in time between (1) Falash's alleged advocacy work – in particular, his recommendation for computer equipment for special education students in August

**MEMORANDUM DECISION AND ORDER - 8**

and September 2013 – and, (2) being placed on administrative leave and, ultimately, fired during that same time frame, it is plausible to infer that the two are related for the purposes of establishing the requisite causal connection.  *See, e.g.*, *US E.E.O.C v. Placer ARC*, 114 F. Supp. 3d 1048, 1061 (E.D. Cal. 2015) ("Facts sufficient to establish the causation element of a prima facie case may be inferred from circumstantial evidence such as the employer's knowledge that the plaintiff engaged in protected activities and the proximity in time between the protected action and the allegedly retaliatory employment decision."); *see also Corrales*, 2010 WL 2384599 at *6 ("Thus, there was no gap in time between the protected activity and the termination.  Such continuous activity places it 'very close' in time to the alleged retaliatory act so as to create a permissible inference that there was a connection between the two.").[4]  As such, an genuine issue of material fact exists concerning whether a connection exists between Falash's protected activity and his firing.  In short, this means that, after viewing the disputed facts in Falash's favor, he has stated a prima facie claim under the Rehabilitation Act and Title II of the ADA.

Under *McDonnell Douglas*, the burden then shifts to Defendants to articulate a legitimate nondiscriminatory reason for firing Falash.  Defendants have done so, pointing to Falash's alleged shortcomings in being able to satisfactorily complete his work.  *See* Mem. in Supp. of MSJ, p. 15 (Docket No. 38, Att. 1) Then, the burden shifts back to Falash to demonstrate that

---

[4]  Defendants argue in favor of a "but for" causation standard.  *See* Mem. in Supp. of MSJ, p. 12 (Docket No. 38, Att. 1).  Although many district courts within the Ninth Circuit have agreed, the Ninth Circuit itself has not yet fully applied (though it does seem to recognize) this higher standard.  *See Placer ARC*, 114 F. Supp. 3d at 1060; *see also White v. Twin Falls County*, 2016 WL 1275594, *10, n.1 (D. Idaho 2016).  This Memorandum Decision and Order does not resolve the issue here; regardless, even under a but-for standard, questions of fact exist on the issue, precluding summary judgment on this point.

**MEMORANDUM DECISION AND ORDER - 9**

Defendants' articulated reason is merely a pretext for discrimination.  In turn, Falash has met this burden (at least in that he has created a dispute of material fact on the issue).  Juxtaposed with his alleged performance issues, Falash relies upon the fact that his 2013 evaluation was favorable and included a recommendation that he be re-hired for the next school year.  *See* Opp. to MSJ, p. 17 (Docket No. 53) (citing Ex. E to Thomas Aff. (Docket No. 53, Att. 7) (comment from Chouinard as of 6/18/13, stating: "Tom is dedicated to Inspire's student and team; this is evident in his enthusiasm, passion, and work ethic.  He is a believer in Inspire's vision of All Students Can and Must Learn.  I look forward to working with Tom and helping him grow as Inspire's Manager of Special Education throughout the summer and the 13-14 school year.").  Combined with the timing issues of his firing *vis à vis* his alleged advocacy on behalf of disabled students (*see supra*), this evidence is suggestive of pretext.  Accordingly, Defendants' Motion for Summary Judgment is denied in these respects.

## C.    Idaho Code § 6-2101 Claim

The Protection of Public Employees Act (the "Whistle-Blower Act") "protect[s] the integrity of government by providing a legal cause of action for public employees who experience adverse action from their employer as a result of reporting waste and violations of a law, rule or regulation."  I.C. § 6-2101.  To protect an employee from adverse action, the Whistle-Blower Act prohibits an employer from taking adverse action against an employee "because the employee, or a person authorized to act on behalf of the employee, communicates in good faith the existence of any waste of public funds, property or manpower, or a violation or suspected violation of a law, rule or regulation adopted under the law of this state or the United States."  I.C. § 6-2104(1)(a).

**MEMORANDUM DECISION AND ORDER - 10**

To establish a claim under the Whistle-Blower Act, a plaintiff must show, "by a preponderance of the evidence, that the employee has suffered an adverse action because the employee . . . engaged or intended to engage in an activity protected under [Idaho Code § 6-2104]." I.C. § 6-2105(4).  To survive summary judgment, Falash must only present evidence from which a rational inference of retaliatory discharge under the Whistle-Blower Act could be drawn.  *See Curlee v. Kootenai Co. Fire & Rescue*, 224 P.3d 458, 464 (Idaho 2008).  On motion for summary judgment, the court is not to consider the employer's rationale for discharge, nor require the employee to dispute the employer's proffered non-discriminatory reasons for discharge.  *See id.* at 463-64 (holding that the *McDonnell Douglas* burden-shifting analysis does not apply at summary judgment stage under Whistle-Blower Act); *but see Summers v. City of McCall*, 84 F. Supp. 3d 1126, 1137-38 (D. Idaho 2015) (discussing conflict in Idaho concerning whether, in fact, *McDonnell Douglas* analysis applies to Whistler-Blower Act claims at summary judgment stage – standard *does* apply at trial).[5]

A prima facie case for retaliatory discharge under the Whistle-Blower Act requires Falash to show: (1) he was an "employee" that engaged or intended to engage in protected activity; (2) his "employer" took adverse action against him; and (3) the existence of a causal connection between the protected activity and the employer's adverse action.  *See Van v. Portneuf Med. Cntr.*, 330 P.3d 1054, 1059 (Idaho 2014).

Here, Defendants argue that Falash fails his burden of a prima facie case under the Whistle-Blower Act because "Inspire and Connections listened to his disenrollment policy and allowed him to present its merits" and that "[t]he facts establish that . . . Falash was terminated

---

[5]  Under the circumstances, any conflict in this respect is immaterial given the Court's consideration of other claims employing the *McDonnel Douglas* standard and the arguments raised in relation to Falash's Whistle-Blower Act claim here.

**MEMORANDUM DECISION AND ORDER - 11**

as a result of the inability to improve upon the issues contained in his [performance improvement plan]." Mem. in Supp. of MSJ, pp. 16-17 (Docket No. 38, Att. 1). In actuality, this argument already assumes that Falash has made a prima facie case for retaliatory discharge under the Whistle-Blower Act, but, even so, that he was fired for a legitimate, non-discriminatory reason (as if the *McDonnel Douglas* burden-shifting framework applied). Defendants *also* argue that Falash "cannot establish that an adverse employment action was taken against him because of any so-called whistleblowing activity" – an attack of the third element of the prima facie case. *Id*. at p. 17. Neither argument is persuasive as a matter of law.

First, Defendants do not dispute that Falash engaged in protected activity. *See* Pl.'s SODF Nos. 9, 11, 13, 15 (Docket No. 53, Att. 1). Therefore, assuming the *McDonnel Douglas* framework applies, Defendants' argument that Falash was fired for work-performance issues has already been rebuffed in the context of Falash's Section 504 of the Rehabilitation Act of 1973 and Title II of the ADA claims. *See supra*. Second, questions of fact already inform the motivations leading up to Falash's firing – again, as discussed in the context of Falash's Section 504 of the Rehabilitation Act of 1973 and Title II of the ADA claims. *See supra*. These issues of fact prevent a finding as a matter of law that Defendant did not violate the Whistle-Blower Act. Defendants' Motion for Summary Judgment is denied in this respect.

## D.      Tortious Interference with Contract/Prospective Economic Advantage Claims

The Idaho Tort Claims Act ("ITCA") establishes that governmental entities and their employees are subject to liability for their own negligent or wrongful acts. *See Hoffer v. City of Boise*, 257 P.3d 1226, 1228 (Idaho 2011) (citing *Grant v. City of Twin Falls*, 813 p.2d 880, 887 (Idaho 1991)); *see also* I.C. § 6-903(1) ("Except as otherwise provided in this act, every governmental entity is subject to liability for money damages arising out of its negligent or

**MEMORANDUM DECISION AND ORDER - 12**

otherwise wrongful acts or omissions and those of its employees acting within the course and scope of their employment or duties . . . where the governmental entity if a private person or entity would be liable for money damages under the laws of the state of Idaho."). *However*, the ITCA goes on to expressly exempt certain causes of action from the general rule that governmental entities (and their employees) are subject to liability. *See Hoffer*, 257 P.3d at 1228 (citing *Grant*, 813 P.2d at 887-88). In this respect, the ITCA reads:

> A governmental entity and its employees while acting within the course and scope of their employment and without malice or criminal intent shall not be liable for any claim which . . . [a]rises out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, *or interference with contract rights.*

I.C. § 6-903(3) (emphasis added). Relevant here, Falash asserts his tortious interference with contract/prospective economic advantage claims against Wesley only.

But Falash's other factual allegations are that Wesley and her employer, Connections, are "state actors" (which Defendants have admitted in the context of Falash's Constitutional due process claims). *See, e.g.*, Am. Compl. ¶¶ 17, 68-69 (Docket No. 26) ("Defendant Connections was a state actor and engaged in state action . . . . All Defendants are state actors whom proximately caused the due process violation . . . . Connections is a state actor based on its close nexus to and it contractual agreements with Inspire."). These allegations, alongside state law implications relative to the formation and funding of charter schools in the state of Idaho (*see, e.g.*, *id.* at ¶¶ 10-16), create an uncommon situation in which both Inspire and Connections (and, by extension, Wesley) could be considered state actors and/or governmental entities for the purposes of federal Section 1983 claims, in addition to state common law claims. Indeed, this is what Falash has done. It would now be disingenuous for Falash, in the face of a motion for summary judgment, to argue that Defendants, including Wesley, are state actors for the purposes

**MEMORANDUM DECISION AND ORDER - 13**

of one claim, but not another.  Accordingly, Idaho Code § 6-903(3) precludes Falash's toritous

interference with contract/prospective economic advantage claims against Wesley.[6]  Defendants'

Motion for Summary Judgment is granted in these respects.

**E.      Title I ADA Claim**

        To state a prima facie case of Title I ADA discrimination, Falash must show that (1) he is

a disabled person within the meaning of the ADA; (2) he was able to perform the essential

functions of the job, with or without reasonable accommodation; and (3) he suffered an adverse

employment action because of his disability – understood to mean that his disability was a

motivating factor behind the discrimination.  *See Allen v. Pac. Bell*, 348 F.3d 113, 114 (9th Cir.

2003); *see also Head v. Glacier Northwest, Inc.*, 413 F.3d 1053, 1065 (9th Cir. 2005) (holding

that "a motivating factor standard is the appropriate standard for causation in the ADA

context.").  Defendants argue that Falash has not established a prima facie case of disability

discrimination.  *See* Mem. in Supp. of MSJ, pp. 21-22 (Docket No. 38, Att. 1); *see also*  The

undersigned agrees.

        While the record could be read to support an argument that Falash was fired because he

was ineffective at his job or, conversely, that he was fired in retaliation for engaging in otherwise

protected activity (*see supra*), the record does not support an argument that he was fired because

he, himself, was allegedly disabled or perceived as such  To be sure, the references in the record

speaking to Falash's disability and, in turn, the alleged adverse employment actions resulting

---

        [6]  This decision does not decide, and need not decide, whether Wesley acted with the
necessary malice or criminal intent to render ITCA's exemption inapplicable.  *See Miller v.
Idaho State Patrol*, 252 P.3d 1274, 1288 (Idaho 2011) ("Malice here means 'the intentional
commission of a wrongful or unlawful act, without legal justification or excuse and with ill will,
whether or not injury was intended.'") (quoting *Beco Constr. Co. v. City of Idaho Falls*, 865 P.2d
950, 955 (Idaho 1993)).

**MEMORANDUM DECISION AND ORDER - 14**

therefrom that Falash complains of, preceded Falash's termination to such a degree that no reasonable trier-of-fact could find that there was a connection, or motivating factor, between the two.  Defendants' Motion for Summary Judgment is granted in this respect.

## IV.  ORDER

Based upon the foregoing, IT IS HEREBY ORDERED that Defendants' Renewed Motion for Summary Judgment (Docket No. 50) is GRANTED, in part, and DENIED, in part, as follows:

1.     Falash's Constitutional due process claims remain.  In this respect, Defendants' Motion for Summary Judgment is DENIED.

2.     Falash's Section 504 of the Rehabilitation Act of 1973 claim remains.  In this respect, Defendants' Motion for Summary Judgment is DENIED.

3.     Falash's Title II ADA claim remains.  In this respect, Defendants' Motion for Summary Judgment is DENIED.

4.     Falash's Idaho Code § 6-2101 claim remains.  In this respect, Defendants' Motion for Summary Judgment is DENIED.

5.     Falash's tortious interference with contract claim remains.  In this respect, Defendants' Motion for Summary Judgment is GRANTED.

6.     Falash's tortious interference with prospective economic advantage is dismissed. In this respect, Defendants' Motion for Summary Judgment is GRANTED.

///

///

///

///

**MEMORANDUM DECISION AND ORDER - 15**

7.      Falash's Title I ADA claim is dismissed.  In this respect, Defendants' Motion for

Summary Judgment is GRANTED.



DATED:  **September 12, 2016**

Honorable Ronald E. Bush
Chief U. S. Magistrate Judge

**MEMORANDUM DECISION AND ORDER - 16**